IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 21-cr-160-TJK |
| | ) |
| CORY KONOLD, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM OF CORY KONOLD**

Cory Konold, 28, traveled to D.C. on January 6 because his older sister asked him to. He is not even interested in politics, much less a political agitator. For his whole life he has suffered from a learning disability. He understands that he should not have followed the crowd past police lines that day and should not have entered the Capitol. Mr. Konold is remorseful for his conduct and has accepted responsibility by pleading guilty to a felony civil disorder offense.

At the same time, a comparison with every other January 6 defendant charged with the same offense shows that Mr. Konold is easily the least culpable of the entire set. He followed his sister to protect her, not to interfere with Congress for political reasons. If anything, his conduct was less serious than that of hundreds of misdemeanants who entered the Capitol. Accordingly, Mr. Konold respectfully requests that the Court impose the sentence recommended by the Probation Office.

**Factual background**

  A.  **Konold's background, family, employment history, and character**

Mr. Konold is a shy, unassuming personality. He is one year the junior of his sister, co-defendant Felicia Konold. Born in May 1995, Mr. Konold was raised in Tucson, Arizona.

1

Presentence Investigation Report (PSR), ¶ 63.  His parents separated when he was approximately three years old.  Early on, Mr. Konold was diagnosed with dyslexia and enrolled in special education classes.  *Id.*, ¶ 68.

After high school, Mr. Konold attended one year of community college and ultimately withdrew.  PSR, ¶ 71.  Although he was unemployed at the time of his arrest, he is a carpenter by training and engages in commercial and residential remodeling when the work is available.  *Id.*  When he was laid off during the pandemic, Mr. Konold suffered from depression but never received treatment.  *Id.*, ¶ 68.

In his interactions with Felicia, it is clear that Mr. Konold looks up to his older sister.  She dominates the conversation, while Mr. Konold remains reserved.  Cory Konold is not politically engaged and does not closely follow current events and the political world.  He traveled to D.C. on January 6 because his sister asked him to come along on the trip.  He wanted to protect her.

**B.    The conviction and presentence investigation report**

On November 1, 2023, Konold pled guilty to Count Three of the Indictment, charging interference with law enforcement officers during a civil disorder under 18 U.S.C. § 231(a)(3).

The stipulated facts are as follows.  Mr. Konold traveled across the country with his older sister, Felicia Konold, to attend the former president's rally on January 6.  Along the way they encountered some of the co-defendants in this case, including Christopher Kuehne and Luis Enrique Colon.  Mr. Konold understands that some of those defendants may be members of the Proud Boys from the Kansas City area, but Mr. Konold himself is not a member.  PSR, ¶ 23.

On January 6, Konold followed the crowd of Proud Boys members and others toward the Capitol Building.  At around 1:00 p.m. a crowd standing near the Peace Circle breached the first

line of police guarding the Capitol.  Konold was among them.  He trampled on overturned police barricades and made his way to the west front of the Capitol, where he remained for over an hour.  PSR, ¶ 24.

Konold and his sister pushed through another police line.  PSR, ¶ 26.  Ultimately, Konold entered the building and made his way to the Crypt.  There, some U.S. Capitol Police officers positioned themselves on the opposite side of a large, sliding-door-style metal barrier that was being lowered from overhead.  Felicia Konold at one point used her hand to push up on the metal barrier.  She and Mr. Konold entered the Capitol Visitor Center and a short time later, left the building.  *Id.*, ¶ 29.

The government observes that "Cory stole a police riot helmet, likely finding it on the ground" and later "triumphantly brandished the helmet." Gov't Sentencing Mem., p. 9.  Konold makes no excuses for taking the helmet but he does note that, shortly after picking it up, he attempted to return it to multiple police officers at the scene.  They would not take it from him.

The PSR identifies U.S.S.G. §2A2.4 as the controlling guideline.  PSR, ¶ 46.  The base offense level is 10.  *Id.*  The PSR then decreased Mr. Konold's offense level by two levels for his acceptance of responsibility.  *Id.*, ¶ 53 (citing U.S.S.G. §3E1.1(a)).  The PSR decreased Mr. Konold's offense level by another two levels, as he is a Zero Point Offender.  *Id.*, ¶ 52 (citing U.S.S.G. §4C1.1).[1]

---

[1] The government argues that Konold does not qualify under §4C1.1(a)(3) because he "use[d] violence" when he "push[ed] apparently with all [his] strength against bike racks" placed near the west front.  Gov't Sentencing Mem., p. 6.  But while Konold concedes that this act constituted "interfere[nce]" with law enforcement, § 231(a)(3), he denies that he intended to "use violence," as his intent was to stay with his sister while avoiding being crushed by the advancing police line.  In other words, while his intent to avoid being swept from his place in a restricted area by the police is consistent with police interference, it need not necessarily entail an intent to use violence against the police or their property.

3

Thus, the PSR calculated Konold's total offense level at 6. In Criminal History Category I, that would generate a Guidelines range of 0-6 months' incarceration. PSR, ¶ 79.

On January 4, the Probation Office recommended a sentence of time served with one year of supervised release and restitution in the amount of $2,000. 1/4/2024 Probation Office Recommendation. The Office explained:

> Mr. Konold has no criminal history and qualifies for the zero-point offender reduction. He recalls a decent upbringing, living between his mother and father's homes. Mr. Konold currently resides with his mother and is employed full-time.
>
> Considering the nature of the offense, the defendant's lack of criminal history, and his personal characteristics, a guideline sentence of time served is recommended. The recommended sentence is sufficient, but not greater than necessary to reflect the seriousness of the offense and to promote respect for the law, as well as to protect the public from further crimes of the defendant.

*Id.*

**Argument**

**I.      Sentencing procedure**

As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101.

The Court must merely impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661. As the Court knows, the cardinal requirement of § 3553(a) is that the "court

shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a).

II.     **The § 3553(a) factors favor the sentence recommended by the Probation Office**

   A.   **The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1))**

A number of considerations under § 3553(a)(1) warrant the sentence recommended by the Probation Office: (1) nearly all the § 231(a)(3) cases arising from January 6 are more severe than Konold's; (2) Konold was at the Capitol to protect his sister; (3) Konold's cooperation with the government; (4) first-time offender status and atypical conduct; (5) his family and community support; and (6) his sincere remorse.

   1.   **Nearly all the § 231(a)(3) cases are more severe than Konold's**

Konold was convicted under § 231(a)(3) though he did not engage in an act of violence against law enforcement officers. That distinguishes his case from most other January 6 cases involving the same charge:

| § 231(a)(3) 1/6 Defendant | Case No. | Violent criminal conduct |
|---|---|---|
| Adams | 21-cr-84 | Pushed police officers against a wall |
| Alam | 21-cr-190 | Threw punches at law enforcement |
| Antonio | 21-cr-497 | Threw objects at police |
| Ballard | 21-mj-529 | Threw tabletop at police |
| Bingham | 21-mj-430 | Threw punch at officer |
| Brock | 21-mj-527 | Striking police with rod |
| Brockhoff | 21-mj-444 | Shooting fire extinguisher at police |
| Brown | 21-mj-565 | Spraying pepper spray in officers' faces |

| | | |
|---|---|---|
| Brown | 21-mj-498 | Pushing and punching police |
| Buteau | 21-mj-487 | Throwing hard objects at police |
| Byerly | 21-mj-500 | Tasing police |
| Caldwell | 21-cr-181 | Spraying pepper spray at police |
| Chrestman | 2021 U.S. Dist. LEXIS 36117 | Threatening to assault officers |
| Cua | 2021 U.S. Dist. LEXIS 44293 | Shoving officer |
| Coffee | 21-cr-327 | Hitting officer with crutch |
| Copeland | 21-mj-403 | Shoving and grabbing officer |
| Council | 21-mj-08 | Shoving officers |
| Dasilva | 21-mj-520 | Grabbing, pushing and pulling police |
| Davis | 21-mj-536 | Shoving police |
| DeGrave | 2021 U.S. Dist. LEXIS 92102 | "Coming to blows" with police |
| Egtvedt | 21-cr-177 | Throwing punches at police |
| Fairlamb | 21-cr-120 | Shoving and punching police |
| Fitzsimons | 21-cr-158 | Punching officers |
| Foy | 2021 U.S. Dist. LEXIS 123953 | Swinging hockey stick and throwing objects at police |
| Galetto | 21-mj-386 | Knocking officer to the ground |
| Hayah | 21-mj-577 | Shoving officers |
| Jenkins | 21-cr-245 | Throwing pole at officers |
| Johnson | 21-cr-332 | Knocking over officer who falls unconscious |
| Judd | 21-cr-40 | Throwing object on fire at police |
| Klein | 21-cr-236 | Striking officers with shield |
| Lang | 21-cr-53 | Thrusting a bat and shield at officers |

6

| | | |
|---|---|---|
| Languerand | 21-cr-353 | Throwing garbage cans at officers |
| Lazar | 21-mj-533 | Spraying chemicals at police |
| Mackrell | 21-cr-276 | Striking multiple officers |
| McCaughey III | 21-cr-40 | Striking multiple officers |
| McGrew | 21-cr-398 | Striking officer |
| McHugh | 21-cr-453 | Macing officers |
| McKellop | 21-cr-268 | Macing officers |
| Mellis | 21-cr-206 | Striking officers with a stick |
| Middleton | 21-cr-367 | Poking officers in the face |
| Miller | 21-cr-75 | Spraying officers with pepper spray |
| Morss | 21-cr-40 | Striking officer with shield |
| Mullins | 21-cr-35 | Assaulting officer |
| Nichols | 21-cr-117 | Spraying pepper spray at officers |
| Owens | 21-cr-286 | Striking officer in the head with skateboard |
| Padilla | 21-cr-214 | Ramming cop with metal sign |
| Palmer | 21-cr-328 | Spraying fire extinguisher in face of officer |
| Pezzola | 21-cr-52 | Smashing large window of Congress, a crime of violence |
| Quaglin | 21-cr-40 | Striking multiple officers |
| Randolph | 21-cr-332 | Assaulting officer |
| Sabol | 21-cr-35 | Striking officer |
| Sandlin | 21-cr-88 | Attempting to rip helmet off officer |
| Sandford | 21-cr-86 | Throws fire extinguisher at officers |
| Sargent | 21-cr-258 | Throwing punches at officers |

| | | |
|---|---|---|
| Schwartz | 21-cr-178 | Bear spraying officers |
| Shively | 21-cr-151 | Assaulting officers |
| Sibick | 21-cr-291 | Attempting to take officer's gun, while threatening to kill him |
| Stager | 21-cr-35 | Smashing officer with flag pole |
| Stevens | 21-cr-40 | Striking officer with shield |
| Warnagris | 21-cr-382 | Shoving officer |
| Webster | 21-cr-208 | Striking officer with flag pole |
| Woods | 21-cr-476 | Tripping officer and pushing her to ground |

That Konold's interfering acts did not involve physical violence against law enforcement officers is a powerful ground for imposing the sentence recommended by the Probation Office.

### 2. Konold was at the Capitol to protect his sister

Unlike virtually every other January 6 defendant, Mr. Konold had no political purpose at the Capitol that day. He was not present to protest the results of the 2020 presidential election or to induce Congress to take some desired action. He was there for the purely personal reason that his sister asked him to join her. That does not mean Mr. Konold is not guilty of the offense to which he pled guilty. However, it is mitigating that his goal was not to interfere with the political and constitutional process unfolding that day. It also implies that Mr. Konold poses a far less significant threat of recidivism and future political agitation.

### 3. Konold's cooperation with the government

Early in his case, Konold agreed to meet with prosecutors and federal agents for an hours-long interview and proffer session. This early and substantial cooperation with the government supports the sentence recommended by the Probation Office.

8

### 4. First-time offender and atypical conduct

The fact that Konold is a first-time offender, and that the offense conduct is atypical for him, is an appropriate basis for a mitigated sentence. *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (affirming that district court's downward variance from 60-to-79-month range to below the calculated Guidelines range was reasonable and permissibly took into account the defendant's lack of a criminal record); *United States v. Munoz-Nava*, 524 F.3d 1142, 1143 (10th Cir. 2008) (downward variance to one year imprisonment and one year home confinement from recommended Guidelines range of 65-78 months imprisonment supported by district court's finding of several factors including that defendant had no felony criminal record and his offense was "highly out of character"); *United States v. Tomko*, 562 F.3d 558, 560 (3d Cir. 2009) (affirming probationary sentence based partly on defendant's "negligible criminal history").

That the Guidelines already take into account Konold's lack of criminal history does not mean that it is inappropriate for the Court to vary downward on the same basis. *See United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) ("[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines . . . when a district court applies broader § 3553(a) considerations in granting [a sentencing] variance.").

Because Mr. Konold qualifies for Zero Point Offender status and falls in Zone A of the Sentencing Table, the recently revised Guidelines instruct that a non-incarceration sentence is presumptive. U.S.S.G. § 5C1.1 cmt. n. 10(A).

### 5. Konold's community and family support

The support on the outside that a defendant can be expected to receive from family and community members is another valid basis for a mitigated sentence. *E.g.*, *United States v. Sayad*,

589 F.3d 1110, 1114-15 (10th Cir. 2009) (defendant's "supporting and loving family" a reason for downward variance); *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008) (family support one of three valid reasons for 91-month downward variance).

Konold has an extensive network of friends that can provide him with the support he needs for successful rehabilitation. In addition, he can expect such support from his sister, Felicia.

### 6. Konold's remorse

A defendant's true remorse, whether exceptional or not, is a valid basis for a mitigated sentence. *E.g.*, *United States v. Howe*, 543 Fed. 3d 128, 138 (3d Cir. 2008).

Konold is earnestly remorseful for his misconduct on January 6. In his allocution, he will apologize to law enforcement and members of Congress and their staff for his role in the riot.

### B. Avoiding unwarranted sentence disparities (§ 3553(a)(6))

Section 3553(a) requires courts to fashion a sentence in a way that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Sentencing Konold to a term of incarceration would create unwarranted sentence disparities along several levels.

The defendant in *United States v. Hazelton* was sentenced for a conviction under the same statute as Konold. 21-cr-30-JDB. Hazelton stood outside the lower west terrace tunnel and encouraged more men to enter the Capitol. Like Mr. Konold, Hazelton did not engage in violence. Judge Bates imposed a sentence of 10 days' incarceration followed by 24 months of

10

supervised release.  *Id.*, 6/01/2023 Minute Entry.  Imposing a longer sentence on Mr. Konold would create an unwarranted sentence disparity.

The government's comparisons with *United States v. Cooke*, 22-cr-52 and *United States v. Cortez*, 21-cr-317 are misplaced.  Gov't Sentencing Mem., pp. 20-21.  Cooke committed multiple assaults of law enforcement officers and smashed a Capitol window with a flag pole. *Cooke*, 22-cr-52, ECF 52, pp. 6-32.  The young man brought firearms to D.C.  *Id.*, p. 34.  He celebrated when a companion exclaimed, "Go get Nancy. I want to scalp that bitch." *Id.*, p. 31. He had a political purpose, unlike Mr. Konold.  The most salient fact about his case is that he was permitted to plead guilty to the same offense that Konold pled to.

Cortez was far more aggressive and confrontational than Konold.  *Cortez*, 21-cr-317, ECF 71, pp. 19-22.  Police shot a cloud of pepper spray into a large group that included Cortez to dissuade them from entering the building.  *Id.*, p. 19.  On his own, Cortez braved the haze in a demonstration to the rioters that they could push ahead.  He then smashed a flag pole repeatedly in front of the police to intimidate them and encourage the crowd.  *Id.*, p. 20.  He screamed, "Fuck you!" and "Oath breakers" at the officers.  His actions prevented officers from taking further action to block an entrance to the building.  *Id.*  And, again, Cortez had a political purpose, unlike Mr. Konold.

Consider instead the case of Matthew Wood. Wood was convicted of a § 1512(c) offense, a conviction more serious than Konold's.  *U.S. v. Matthew Wood*, 21-cr-223-APM (D.D.C. 2021), Gov't Sentencing Mem., ECF 55, p. 46.  And Wood's conduct was more serious than Konold's.  Before January 6, Wood vowed to "raid Congress" and "be brave heart in that bitch." *Id.*, p. 2.  Terrifyingly, he compared his red car to "the blood I will shed" in D.C.  *Id.*, p. 60.

Wood was one of the first rioters in the building and one of the last to leave. *Id.* He remained inside for 80 minutes. *Id.*, p. 59. Wood was constantly encouraging other rioters to enter the building and breach barricades. *Id.*

Wood received a sentence of 36 months' probation with 12 months of home detention. *U.S. v. Matthew Wood*, 21-cr-223-APM (D.D.C. 2021), ECF 65. Sentencing Konold to a term of incarceration would create an unwarranted disparity with Wood.

Or consider William Isaacs. Isaacs was not only a key member of the Oath Keepers militia, he was also convicted of conspiring to violate § 1512(c), as well as several other felonies of which Konold is not guilty. *U.S. v. Isaacs*, 21-cr-28-APM (D.D.C. 2021). Plainly, the conduct of the Oath Keepers, many of whom were found guilty of seditious conspiracy, was far more serious than Konold's. Isaacs was sentenced to 60 months' probation, 500 hours of community service, and 18 months of home confinement. Sentencing Konold to a term of incarceration would create an unwarranted disparity with Isaacs.

Finally, a term of incarceration would create unwarranted disparities between Konold's sentence and sentences imposed on parading/demonstrating defendants in January 6 cases. In many instances, the conduct of these probationary misdemeanants was more disruptive than Konold's. Department of Justice January 6 Sentencing Chart, available at: https://www.justice.gov/file/1593211/download. Here are some examples:

| 1/6 Def. & Case No. | Charge | Sentence | Offense Conduct |
|---|---|---|---|
| Josh & Jessica Bustle, 21cr238 | Parading in Capitol | 24 mos. probation and 24 mos. supervised release | Entered Capitol Building, remained for 20 minutes. Posted on Facebook, "Pence is a traitor. We stormed the capital (sic)... We need a revolution!" |

12

| | | | |
|---|---|---|---|
| Bryan Ivey, 21cr267 | Parading in Capitol | 36 mos. probation | Entered Capitol Building through a breached window, waving additional rioters into the building, spending 30 minutes inside. |
| Valerie Ehrke, 21cr97 | Parading in Capitol | 36 mos. probation | Entered Capitol Building. |
| Andrew Bennett, 21cr227 | Parading in Capitol | 3 mos. home confinement, 24 mos. probation | Entered the Capitol Building, livestreaming the event on his Facebook page for over an hour. |
| Lori, Thomas Vinson, 21cr355 | Parading in Capitol | 5 years probation, 120 hours of community service | Entered the Capitol Building, later telling news outlet that her actions were "justified" and that she would "do this all over again." |
| Jordan Stotts, 21cr272 | Parading in Capitol | 24 mos. probation | Entered the Capitol Building, remained inside for an hour, celebrating with others and taking videos with his cell phone. |
| Douglas Sweet, Cindy Fitchett, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, Fitchett filming herself saying, "We are storming the Capitol. We have broken in." |
| Rasha Abdual-Ragheb, 21cr42 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, desiring to demonstrate against Congress. |
| Jonathan Sanders, 21cr384 | Parading in the Capitol | 36 mos. probation, 60 hours community service | Entered the Capitol Building, intending to protest presidential election |
| Michael Orangias, 21cr265 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures inside. |

| | | | |
|---|---|---|---|
| John Wilkerson, 21cr302 | Parading in the Capitol | 36 mos. probation, 60 hours of community service | Entered the Capitol Building, posting on social media, "today was a good day, we got inside the Capitol." |
| Brandon Nelson, 21cr344 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, co-defendant texting, "We stormed the Capitol and shut it down. Currently still inside" and "Patriots won't go down without a fight." |
| Andrew Wrigley, 21cr42 | Parading in the Capitol | 18 mos. probation | Entered the Capitol Building, taking pictures of himself inside |
| Jacob Hiles, 21cr155 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures showing him smoking "an unknown substance" inside. |
| Bruce Harrison, 21cr365 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures of himself inside. |
| Terry Brown, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, disobeyed police order to leave. |
| Felipe Marquez, 21cr136 | Disorderly conduct in the Capitol | 18 mos. probation | Entered the "hideaway" office of Senator Merkley, saying, "We only broke a couple windows." |
| Michael Rusyn, 21cr303 | Parading in the Capitol | 24 mos. probation | Among the first to enter the Capitol through a certain door, part of a group of people who shouted, "Tell Pelosi we're coming for that b****," called police |

| | | | traitors, and shouted "Stop the steal." |
|---|---|---|---|
| Andrew Hatley, 21cr98 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures with various historical statues. |
| Nicholas Reimler, 21cr239 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures of himself and friends. |
| Caleb Jones, 21cr321 | Parading in the Capitol | 2 mos. home confinement, 24 mos. probation | Entered the Capitol Building, "walking down numerous hallways and into the Capitol Rotunda." |
| Anthony R. Mariotto, 21cr94 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, posting on Facebook, "This is our house" under selfie photograph. |
| Michael Stepakoff, 21cr96 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, posting on social media after, "The Capitol is OUR house, not theirs." |
| Tanner Sells, 21cr549 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building. |
| Gary Edwards, 21cr366 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, including Senate office S140. |
| Zachary, Kelsey Wilson, 21cr578 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, penetrating all the way to the Speaker's personal office |
| Jennifer Parks, Esther Schwemmer, 21cr363 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures inside |
| Jackson Kostolsky, 21cr197 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building |
| Eduardo Gonzalez, 21cr115 | Parading in the Capitol | 24 mos. probation | Entered the Capitol, smoking marijuana inside "multiple times." |
| Israel Tutrow, 21cr310 | Parading in Capitol | 36 mos. probation | Entered the Capitol Building with a knife |

In short, sentencing Konold to a term of incarceration would create dozens or even hundreds of unwarranted sentence disparities.

### C. The seriousness of the offense and deterrence (§ 3553(a)(2))

The Court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." § 3553(a)(2).

Konold is 28-year-old dyslexic man with no criminal history. He is not politically engaged. Those biographical facts alone imply he is highly unlikely to recidivate. Prior to January 6, demonstrators at the Capitol who violated relevant law were typically penalized under a process called "post and forfeit": they paid to have their demonstration-related case dropped for approximately $25-100. ACLU, District of Columbia, Demonstrations in D.C., available at: https://www.acludc.org/en/know-your-rights/know-your-rights-demonstrations-dc. That was deemed sufficient deterrence. In contrast, Konold was convicted of a felony in federal court. FBI agents came to his home. A lengthy sentence of incarceration is not needed to deter Konold from entering the Capitol again without authorization. Together with scathing media criticism and social ostracization, a federal conviction—as well as a sentence of probation, home detention, and significant fine—will well and truly deter Konold. The heavy shame Konold has experienced is itself a guarantee of deterrence. *See*, *e.g.*, *United States v. Polizzi*, 549 F. Supp. 2d 308, 449 (E.D.N.Y. 2008) (specific deterrence satisfied by "intense shame created by the convictions"); *United States v. Maynard*, 2020 U.S. Dist. LEXIS 179542, at *5 (E.D.N.Y. Dec. 17, 2012) (Weinstein, J.) (same).

**Conclusion**

For all the foregoing reasons, Konold respectfully requests the sentence recommended by the Probation Office.

Dated: January 17, 2024        Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com


*Attorney for Cory Konold*


**Certificate of Service**

I hereby certify that on the 17th day of January, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com


*Attorney for Cory Konold*